CRAIG A. GELFOUND (SBN 176378)
**ARENT FOX LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:  213.629.7401
Email:        craig.gelfound@arentfox.com

DANA J. FINBERG (SBN 257459)
SARA T. SCHNEIDER (SBN 298103)
**ARENT FOX LLP**
55 Second Street, 21st Floor
San Francisco, CA  94105
Telephone:  415.757.5500
Facsimile:  415.757.5501
Email:        dana.finberg@arentfox.com
              sara.schneider@arentfox.com

Attorneys for Plaintiff
Brain Injury Association of California

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAIN INJURY ASSOCIATION OF CALIFORNIA<br><br>                    Plaintiff,<br><br>v.<br><br>NAZ YARI; and DOES 1 through 50, inclusive,<br><br>                    Defendant. | Case No.<br><br>**COMPLAINT FOR**<br><br>**1. MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DTSA**<br><br>**2. BREACH OF CONTRACT**<br><br>**3. BREACH OF FIDUCIARY DUTY**<br><br>**4. VIOLATION OF CAL. BUS. & PROF. CODE SECTION 17200**<br><br>**DEMAND FOR JURY TRIAL** |

Brain Injury Association of California ("Plaintiff" or "BIACAL"), by counsel, alleges as follows as its Complaint against Naz Yari ("Defendant" or "Ms. Yari"):

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-1-
Complaint

## **NATURE OF THE ACTION**

1.     BIACAL is a non-profit organization dedicated to serving the community of brain injury survivors, caretakers, family, friends, and professionals. BIACAL's mission is to advance awareness, research, treatment, and education and to improve the quality of life for all Californians affected by brain injury.

2.     BIACAL's premier educational and fundraising event is its annual conference which brings together the nation's leading traumatic brain injury medical and legal professionals.  This past April 2019, BIACAL had its most successful "TBI[1] Med Legal" conference yet with more than 2,000 attendees, 100 exhibitors and sponsors, and 50 highly-sought after speakers, making it now the largest TBI conference in the country.  The 2019 BIACAL conference raised a record $500,000 through registration, exhibitor, and sponsorship fees.

3.     The success of the 2019 BIACAL conference owes in large part to its investment of time and money in collecting detailed compilation of data regarding 100,000 members of the TBI community (the "Master List").  In addition to email and mailing addresses, the Master List also includes information mined from BIACAL's and its Board members' existing records and publicly available sources regarding engagements and "click through" rates in response to BIACAL emails; history of attendance at BIACAL conferences and other industry events; history of exhibiting at and sponsorship of BIACAL conferences and other industry events (including type and amount); membership in industry groups (e.g. bar associations, non-profits, or support groups); history of donations to BIACAL; employer affiliations; social media; education; and links to other contacts.  This Master List constitutes confidential, proprietary, and trade secret information owned by BIACAL.

4.     BIACAL granted Ms. Yari, a former volunteer and member of the BIACAL Board of Directors, access to the Master List for the circumscribed

---

[1] Members of the brain injury community frequently use the abbreviation "TBI" for traumatic brain injury.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

purpose of migrating data to BIACAL's customer relationship management ("CRM") database.

5. Ms. Yari has since resigned from the Board of Directors and immediately became a founding member and Vice Chairman of the Brain Society of California, a new non-profit that is launching a competing conference (scheduled for October 4 and 5, 2019) targeting the same community of medical and legal professionals supporting TBI survivors.

6. BIACAL recently confirmed Ms. Yari unlawfully misappropriated the Master List because, on June 28, 2019, Ms. Yari inadvertently copied a BIACAL email address on an email transmitting a contact list to EventBank (the "EventBank List"), the company hosting registration for the competing conference. BIACAL analyzed the EventBank List, which includes more than 22,000 individuals and organizations in the TBI community and confirmed that it contains massive amounts information that *Ms. Yari could have only derived from the Master List*. The most glaring red flag demonstrating Ms. Yari's misappropriation is that over 99.7% of the email addresses in the EventBank List appear on the Master List.

7. Ms. Yari's conduct evidences that she unlawfully possesses a compiled list of BIACAL trade secret information derived from the Master List, and that she intends to unlawfully use that information to promote a competing conference.

8. BIACAL brings this complaint for injunctive relief and damages in order to recover loss of funding opportunities and to prevent further irreparable damage to BIACAL's reputation and goodwill through Ms. Yari's continued possession, use and/or disclosure of the Master List to promote herself and a competing conference. BIACAL also seeks redress for Ms. Yari's breach of contract and fiduciary duty and violation of Business and Professions Code § 17200 *et seq*.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-3-
Complaint

## PARTIES

9.    Plaintiff Brain Injury Association of California is a California 501(c)(3) non-profit organization dedicated to serving the needs of Californians afflicted with brain injuries.  BIACAL is headquartered in Bakersfield, California.

10.    On information and belief, Ms. Yari[2] is an individual who resides in Los Angeles, California.  She previously volunteered for BIACAL and, for a short time, served on BIACAL Board of Directors.  On information and belief, Ms. Yari currently serves on the Board of Directors as Vice Chairman of non-profit organization Brain Society of California.

## JURISDICTION AND VENUE

11.    This Court has original subject matter jurisdiction for this action pursuant to the Defend Trade Secrets Act, 18 U.S.C.§ 1836(c) and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the remaining claims asserted herein pursuant to 28 U.S.C. § 1332.

12.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Ms. Yari is a resident of California and resides in this judicial district; the actions complained of took place in this judicial district; and BIACAL has suffered harm in this district.

## FACTUAL BACKGROUND

**A.    The Master List is BIACAL's most valuable asset.**

13.    Over the past thirty years, BIACAL has been dedicated to supporting brain injuries survivors, their families, their caretakers, and medical and legal professionals who serve them.  BIACAL is committed to durable long-term outcomes through a focus on education and establishment of community support systems and by connecting Californians with necessary brain injury education and support.  BIACAL's programming and services are geared towards supporting TBI survivors and connecting them with available services and resources as close to

[2] On information and belief, Ms. Yari has also used the name Nazreen Allahyari.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

home as possible.

14.     Because of BIACAL's prominence, professionals in the TBI community are eager to affiliate with BIACAL and join its Board of Directors. BIACAL reserves board seats for those who have contributed consistently and significantly to furthering its mission, most notably extending its reach within the community.  Historically, members of the BIACAL Board of Directors have been either medical or legal professionals who have well-known reputations in the TBI community.

15.     Despite this reputation, BIACAL struggled financially in 2014, 2015, and 2016.  The TBI Med Legal conference it hosted every year had strong educational programming and potential for fundraising, but BIACAL struggled to effectively market.  With only approximately 72 attendees in 2015, BIACAL was raising limited funds through the TBI Med Legal conference.

16.     To reinvigorate BIACAL and the TBI Med Legal conference, the Board of Directors brought on a marketing expert, Ms. Erica Chavez, to spearhead a campaign to expand BIACAL's marketing network and grow attendance at the annual conference.  BIACAL aimed to use the conference to raise funds through registration, exhibitor, and sponsorship fees as well as donations.

17.     BIACAL collected contact lists from each Board member. Collectively, the members had personally invested decades and thousands of dollars amassing their own network of contacts.  By way of example only, over the course of five years, BIACAL Board member (and current Chairman) Ms. Chavez had personally invested thousands of dollars of her own money and thousands of hours of her own time to collect detailed data regarding thousands of members of the TBI community and more broadly, personal injury community.  With these efforts, she generated information regarding each attorney, including to the extent available, their firm, specialization, memberships, sponsorships, digital advertising budgets, number of attorneys in their firm, approximate age, speaking engagements and

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-5-
Complaint

topics, and affiliations.

18. Each Board member endeavored to expand their existing lists by systematically collecting contact information and data for each event they attended and each of the organizations with which they were affiliated. Board members also made a concerted effort to attend more events in the TBI community to further BIACAL's goal of reaching more members of the community. These efforts allowed BIACAL to compile data regarding individual and organizations historical participation in events in the TBI community.

19. BIACAL TBI Med Legal sponsors, exhibitors, and speakers also entrusted their own lists of contacts and related data for the purpose of promoting their participation in the conference. One speaker provided data regarding 20,000 trial lawyers from across the country. Again, the speakers provided this information on the condition that it be kept strictly confidential and only used for the conference. BIACAL had a responsibility to ensure that the lists were used exclusively for these authorized purposes.

20. Critically, BIACAL invested significant time and resources (including money) compiling, organizing, and expanding upon this data. This included mining BIACAL and the Board members' existing records and public information regarding history of attendance at BIACAL conferences and other medical, legal or other relevant events; history of sponsorship BIACAL conferences and other industry events (including type and amount for each); membership in industry groups (e.g. bar associations and their boards, medical associations and their boards, non-profits, or support groups); history of donations to BIACAL and similar groups; history of opening specific emails from BIACAL; employer affiliations; and links to other contacts.

21. BIACAL carefully scrubbed and mined this data to learn as much as possible about its contacts to identify its deal buyers. This required a substantial investment of over 10,000 hours of volunteer and independent contractor time. For

example, between just January and April 2019 alone, BIACAL expended over $5,000 hiring data professionals to comb the internet for email addresses and other data regarding members of the medical and legal TBI community to source additional "ideal buyers."

22.　BIACAL extensively researched and made its most significant investment to CRM database managed by Nationbuilder.

23.　The Board considered other less expensive options, such as a list serve, but determined that it would not ensure adequate data security.

24.　Nationbuilder cost approximately $30,0000 in 2019 alone.  This represents BIACAL's single largest investment to date and BIACAL's highest expense in its operating budget going forward ($25,000 annual fee).

25.　The CRM system also allowed BIACAL to collect additional data points from its email system, in particular "click through" or "engagement" rates from its targeted email campaigns.  This let BIACAL know which members of BIACAL's speaking team drew the most engagement.

26.　By April 2019, the Master List compiled detailed data regarding approximately 100,000 individuals and organizations involved in the TBI community nationwide.

27.　The Master List is more than a mere contact list.  It includes detailed data regarding "click through" or engagement history with BIACAL emails; history of attendance at BIACAL conferences and other medical, legal or other relevant events; history of sponsorship of BIACAL conferences and other industry events (including type and amount for each); membership in industry groups (e.g. bar associations and their boards, medical associations and their boards, non-profits, or support groups); history of donations to BIACAL and similar groups; employer affiliations; and links to other contacts.  This data that could not be otherwise recreated.

28.　The Master List has been critical to BIACAL's success in the past few

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

years because it allows BIACAL to reach a large audience and target its marketing to appeal to their individual interests.  This has fueled unprecedented growth in its conference and related fundraising.  Conference attendance jumped from around 72 people in 2015 to more than 2,000 at the April 2019 conference.  As a result, conference revenues increased from less than $20,000 in 2015 to more than $500,000 in 2019.

29.    Simply stated, the Master List is far and away BIACAL's most valuable asset.

**B.    BIACAL takes reasonable measures to protect the Master List.**

30.    Even among non-profits, conferences compete to attract attendees, exhibitors, sponsors, and speakers.  BIACAL would lose a valuable competitive advantage if the Master List were disclosed to competing conferences.

31.    This is because attendees, exhibitors, sponsors, and speakers have limited time and budgets to participate in conferences.  They must, therefore, be highly selective in committing their resources to any conference and are less likely to participate in two conferences covering the same subject matter, with the same speakers, in the same year, and in the same state.

32.    BIACAL stands to benefit in future years from effective leverage of its Master List because the expanded reach will help BIACAL to retain its impressive list of speakers and attract new prominent speakers.  The continued development of the quality of content in turn will also drive future registration fee revenues and increase the value of sponsorships.

33.    Conversely, a BIACAL competitor would gain a tremendous -- and unfair -- competitive advantage if it came into possession of the treasure trove of information that is the Master List.

34.    The individual BIACAL Board members also have a vested interested in protecting the Master List because they contributed their own highly confidential lists of network contacts.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-8-
Complaint

35. BIACAL made representations to its speakers and vendors that it would safeguard the data that they provided and that that data would only be used to promote the BIACAL TBI Med Legal conference.

36. BIACAL goes to great lengths to respect the privacy of those on its contact list because, as a non-profit involved in and dependent upon fundraising, it must be very judicious in its contact with existing and potential attendees, exhibitors, sponsors, and speakers to ensure that they are not bombarded and fatigued by emails, requests for donations, and invitations to events. Many of the individuals on the list only entrust their personal contact information to members of BIACAL they know and trust. Misuse of the contact information threatens BIACAL's reputation and goodwill.

37. Because of its sensitivity and concern about potential misuse and coupled with its proven power, BIACAL has strictly guarded the secrecy of the Master List.

38. In addition to maintaining the Master List on a secure password-protected CRM database, to date BIACAL has entrusted only two members with full access: Ms. Yari and Ms. Chavez.

39. Ms. Chavez and Ms. Yari only received such access after they agreed to (and made representations to BIACAL Board of Directors that they would) only use the Master List and/or or any other lists provided to BIACAL for communications and purposes authorized by BIACAL. Both explicitly agreed to refrain from utilizing the Master List for any other purpose.

**C. BIACAL granted Defendant access to the Master List for the exclusive purpose of migrating contact lists to BIACAL's CRM database.**

40. Around November 2016, Ms. Yari expressed to Ms. Chavez and Dr. Christopher Stephenson (then BIACAL Chairman) an interest in becoming a member of BIACAL's Board of Directors. Dr. Stephenson thanked Ms. Yari for her interest but explained that she would need to first serve meaningfully on one of

BIACAL's committees for at least one full and continuous year before being considered for membership on the Board.

41.    On information and belief, Ms. Yari's interest in joining the BIACAL Board of Directors stemmed from her desire to gain prominence in the medical and legal community.  On information and belief, Ms. Yari is affiliated with Power Liens LLC, a marketing company that maintains a directory of doctors who accept liens or letters of protection for patients involved in accidents and markets that list to lawyers and law firms.  Her involvement in the leadership of BIACAL tends to lend credibility in the medical and legal community to Ms. Yari and Power Liens LLC by affiliation.

42.    Ms. Yari represented that she had valuable experience in data migration and selecting CRM database vendors.  In reliance on her represented expertise, the Board accepted to volunteer to select and engage a CRM database vendor.  Ms. Chavez and Dr. Stephenson informed Ms. Yari that BIACAL's top priority in selecting a CRM vendor was to ensure that the secrecy of the Master List was maintained.

43.    In and about May to June 2018, Ms. Yari researched CRM vendors and reported back to the members of BIACAL's Board of Directors.  In a special meeting of BIACAL's Board of Directors, Ms. Yari presented the options and recommended Nationbuilder, specifically touting the strength of its security controls.

44.    In or around July 2018, BIACAL engaged Nationbuilder to set up its CRM database and link it to BIACAL's conference website.

45.    Ms. Yari volunteered to take responsibility for migrating the Master List data stored in AirTable (a password-secured database) to the Nationbuilder CRM database.

46.    BIACAL only entrusted Ms. Yari with access (via AirTable) to the Master List *after* Ms. Yari explicitly and repeatedly agreed to abide by the

confidentiality terms and strictly limit her contact with the data to the task at hand—migrating the lists.

47. In approximately July 2018, Dr. Stephenson and Ms. Chavez advised Ms. Yari that she could only gain access to the confidential lists that formed the Master List if she agreed to (1) strictly maintain the confidentiality of the individual lists and the Master List and (2) the only access the lists for purposes specifically authorized by BIACAL. Ms. Yari explicitly and repeatedly agreed to these terms. She insisted that she would not dare risk her "reputation" by misusing BIACAL's most confidential and coveted trade secret.

48. Dr. Stephenson and Ms. Chavez further instructed Ms. Yari that her authorized access and use of the confidential data contained in the Master List was strictly limited to migrating data into BIACAL's Nationbuilder database. They gave Ms. Yari strict instructions in handling the data. She was authorized to access the data for the following three-step process: (1) to download the confidential lists from AirTable; (2) to upload the lists as is without *opening, compiling, merging, or in any altering* the confidential lists (including title); and (3) to delete any and all copies of the confidential lists from her computer or any other device.

49. Dr. Stephenson and Ms. Chavez also instructed Ms. Yari that she was expressly prohibited from *copying, printing, photographing, capturing, saving, or reproducing* the confidential BIACAL data in any form. The Board repeatedly told Ms. Yari that copies of the confidential BIACAL data could only be stored on AirTable and Nationbuilder.

50. Ms. Yari affirmatively represented that she would abide by these terms and that she would only use the BIACAL data as explicitly directed. She assured Ms. Chavez and Dr. Stephenson that she understood her obligation and would preserve her own reputation by complying with it.

51. Through these representations made to BIACAL Board members Dr. Stephenson and Ms. Chavez, Ms. Yari entered into a valid and binding oral

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

contract.

52.    Between July 2018 and April 5, 2019, BIACAL continued to provide Ms. Yari with information to upload into the Master List stored on the Nationbuilder CRM database.

53.    Ms. Chavez and Dr. Stephenson regularly reminded Ms. Yari that she was responsible for ensuring that the Master List remained confidential and was only used for the express purpose of migrating data to Nationbuilder.

54.    By way of example, on March 26, 2019, Dr. Stephenson via text message reminded Ms. Yari and others assisting with the conference that they "need to keep [the attendee lists] private.  They are not for any group other than BIACAL to utilize.  We … cannot have a reputation of distributing our attendee lists to anyone that wants it for their own business goals.  We are not for profit and if we act otherwise we will lose credibility in the eyes of the populations we serve."

55.    In response to this text and others, Ms. Yari repeatedly assured Dr. Stephenson and Ms. Chavez that she would honor her obligation.  Indeed, on March 27, 2019 she responded to Dr. Stephenson's text: "100%[.] Thank you [Dr. Stephenson]."

**D.    Defendant held BIACAL's information hostage until BIACAL agreed to give her a seat on the Board of Directors.**

56.    Between in or around July 2018 and April 2019, Ms. Yari was responsible for managing BIACAL's CRM database and the link to BIACAL's conference website.

57.    Ms. Chavez regularly forwarded registrations for attendees and details about sponsorship deals (including amount of sponsorship and the specifics of the signage purchased by the sponsor) to Ms. Yari to import into the CRM database.

58.    Approximately 70 days before the 2019 BIACAL conference, on or about January 20, 2019, Ms. Yari contacted Ms. Chavez and threatened that she

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-12-
Complaint

would halt all work in preparation for the conference if BIACAL did not immediately make her member of the Board of Directors.

59.     At that point in time, Ms. Yari was the principle administrator of the CRM database and accordingly, the only person who had the complete list of attendees registered for the conference and the details about the sponsorship agreements.  This information was critical to producing a successful event because, among other reasons, BIACAL had to create badges for the attendees and signs for the sponsors.

60.     Ms. Chavez consulted with the other members of the Board of Directors and determined that they had no choice that but to accede to Ms. Yari's request in the face of her threat to hold the conference information hostage.  Accordingly, the Board of Directors voted to make Ms. Yari a member of the Board of Directors.  The Board decided to welcome Ms. Yari and make the best of the circumstances.

61.     Ms. Yari's employer Power Liens LLC almost immediately publicized her new role on the BIACAL Board of Directors.  *See* https://powerliens.com/pages/the-brain-injury-association-of-california-names-naz-yari-power-liens-vp-of-business-development-to-board-of-directors/, last accessed July 8, 2019.

62.     As a member of BIACAL's Board of Directors, Ms. Yari owed BIACAL a fiduciary duty, which required Ms. Yari to serve BIACAL with the highest degree of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight, and supervision.

**E.     Ms. Yari Sabotaged the BIACAL 2019 Conference.**

63.     In the weeks leading up to the conference, Ms. Chavez repeatedly asked Ms. Yari for a complete list of the registered attendees and sponsorship deals.  Ms. Yari consistently delayed, claiming that she was still "cleaning the data"

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-13-
Complaint

without providing a coherent explanation of what that meant. Ms. Yari blamed Nationbuilder for the delay and advocated that BIACAL break its contract.

64. When Ms. Chavez continued to press, Ms. Yari would provide only piecemeal information. As a result, Ms. Yari continued to retain control of information critical for the conference's success.

65. Ms. Chavez's concerns about the status of the information grew as Ms. Yari's responses continued to be erratic. The morning of the conference, BIACAL still did not have a complete list of attendees or the details of sponsorship deals. At 2:40 am on April 5, 2019, just three hours before registration, Ms. Yari sent an incoherent email to BIACAL conference committee. The email contained an obviously incomplete list of attendees and a promise to explain in the "morning."

66. An hour later on April 5, 2019, Ms. Yari texted Ms. Chavez that "her body had failed her" and told Ms. Chavez that she would no longer manage registration that same morning. Without explanation, Ms. Yari's staff also never showed up, thereby failing to honor their commitment to help manage registration.

67. As a result of Ms. Yari's failure to fulfill her responsibilities at the conference and resulting breach of her fiduciary duty, BIACAL never had a complete list of individuals who paid the registration fee for the conference. BIACAL had multiple duplicate badges for most and was missing badges for remaining half of attendees. Since BIACAL had not list to confirm who had paid, BIACAL undoubtedly admitted many attendees who never paid the registration fee.

68. Worse yet, Ms. Yari failed to produce sponsorship she was managing on behalf of BIACAL. As a result, sponsors came to the conference and found that the signage they had paid for was missing. This damaged BIACAL's relationships with sponsors, goodwill, and reputation. Further, BIACAL will have to refund approximately $50,000 in sponsorship fees.

69. On information and belief, Ms. Yari also unilaterally turned down and interfered sponsorships because she had personal issues with those potential

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-14-
Complaint

sponsors.  Ms. Yari had no authority to reject sponsors on behalf of BIACAL and thereby, breached her fiduciary duty in doing so.

70.    On information and belief, Ms. Yari and Tina Odjaghian, a workers compensation lawyer, also began publicizing at the conference that they were developing a competing TBI conference targeted at the same medical and legal community.

**F.    Ms. Yari breached her fiduciary duty by leveraging her role on the BIACAL Board to plan a competing conference.**

71.    On April 11, 2019, within just five days after BIACAL's April 5 and 6 conference, Ms. Yari abruptly resigned from the Board of Directors.

72.    That very same day, BIACAL learned that Ms. Yari and Ms. Odjaghian founded the Brain Injury Society of California, a new non-profit organization.  Upon information and belief, they founded this organization for the purpose of producing a TBI medical and legal conference to compete directly with BIACAL's TBI Med Legal conference.

73.    Ms. Yari boasted that this conference would cover the same material as BIACAL's TBI Med Legal conference and even feature the same exact headlining speakers, prominent personal injury lawyers Tom Girardi, Arash Homampour, and Brian Panish.

74.    BIACAL was immediately suspicious and alarmed by this news—Ms. Yari had purportedly already lined up speakers even though she had resigned from the BIACAL Board *just hours earlier*.

75.    On information and belief, Ms. Yari breached her fiduciary duty by planning a competing conference *while still a member of the BIACAL Board of Directors*.

76.    On information and belief, Ms. Yari breached her fiduciary duty by using her role on the BIACAL Board to gain access to BIACAL speakers and recruit them to participate in a competing conference *while she was still a member*

*of the BIACAL Board.* Ms. Yari likely contacted them using their private cell phone numbers that Ms. Chavez had shared with her *while she was still a member of the BIACAL Board.*

77. On information and belief, Ms. Yari further breached her fiduciary duty by using confidential information regarding exhibitors, vendors, and sponsors (including price, terms, and history) she gained by virtue of her role on the BIACAL Board to plan a competing conference.

**G.    Ms. Yari's competing conference copies BIACAL's TBI Med Legal conference.**

78. On information and belief, on or about June 20, 2019, the Brain Society of California officially announced that its "Brain SoCal Med Legal Conference" would take place on October 4 and 5, 2019 in Los Angeles, California.

79. The Brain SoCal Med Legal Conference blatantly copies BIACAL's TBI Med Legal as illustrated by the almost word-for-word copying of BIACAL's tagline:

- BIACAL advertised its 2019 conference as "two-day, four-track, jammed-packed conference featuring over 50 speakers, 30 topics and a party every night."
- Brain Society of California advertises its conference as a "two-day, multi-track, fun-filled conference featuring over 50 speakers, multiple topics, and a party to kick it all off."

80. Brain Society of California's conference name (Med Legal conference) further echoes BIACAL's TBI Med Legal conference name.

81. The description of the conference on Brain Society of California's website further confirms that it will cover the same range of topics that appeal to the members of the TBI medical and legal communities.

82. Brain Society of California has also recruited BIACAL 2019 speakers, including include Tom Girardi, Brian Panish, Arash Homampour, Chris Dolan,

Arent Fox LLP
Attorneys At Law
Los Angeles

-16-
Complaint

Ibiere Seck, John Carpenter, Minh Nguyen, and Tom Feher.

83. The fact that Brain Society of California directly copied BIACAL's conference name, tagline, and speaker list evidences that Brain Society of California not only intends to market its conference to the same audience, but also to create confusion about who is hosting.

**H.     Ms. Yari inadvertently revealed that she unlawfully possesses and intends to use the Master List.**

84. On June 28, 2019 at 5:58 pm, Ms. Yari sent an email with a spreadsheet to two individuals at EventBank (company hosting Brain Society of California's conference registration) and info@biacal.org (a BIACAL Board email address. In the email, Ms. Yari asked EventBank: "Could you please assist in uploading this list of contacts to our event bank in addition to the other list that was emailed fee [sic] days ago by Tina [presumably, Odjaghian]."

85. This EventBank List Ms. Yari transmitted is named "Contact List – 06282019 –Final," and includes contact information for 22,214 individuals and organizations, including 18,834 email addresses.

86. Less than hour later, at 6:52 pm on June 28 -- and likely after realizing she inadvertently copied a BIACAL email address -- Ms. Yari ineptly and ineffectively attempted to cover her tracks. She replied all and instructed: "Please disregard this list and email, as I was driving when sent and have emailed the wrong list. This list should not be used, circulated and must be destroyed immediately."

87. Ms. Yari's transmission of the EventBank List (copying a BIACAL email address) confirmed what BIACAL had suspected since her abrupt resignation—Ms. Yari had misappropriated its Master List.

88. Accordingly, BIACAL analyzed the EventBank List to determine if it contained trade secret information derived from BIACAL's Master List. The analysis conclusively revealed that in violation of the Defend Trade Secrets Act and

in direct violation of her agreement and obligations owed to BIACAL, Ms. Yari had compiled and continued to possess huge volumes of trade secret data extracted from BIACAL's Master List.

89.     Most glaringly, of the 18,834 email addresses in the EventBank List, 18,788 exactly match email addresses in BIACAL's Master List.  This overlap -- over 99.7% -- cannot possibly be explained by pure coincidence.

90.     The EventBank List also includes multiple typographical errors that are identical to errors in lists she received from BIACAL.  Specifically, the EventBank List and the Master List contain numerous examples of the following errors for the exact same contacts: (1) missing first and last names; (2) first and last name both in the "first name" field; (3) "Esq." included in the "first name" field; (3) last name repeated in the "first name" and "last name" fields; (4) an open parenthesis after a name in the "first name" field; and (5) multiple first names listed in the "first name" field.  Additionally, the EventBank List follows the same random capitalization patterns and errors contained in BIACAL's Master List, i.e. the same emails address are in all capital letters and the same first and last names are all in lower case letters.  The repeat of random typographical and capitalization errors cannot possibly be a mere coincidence.  Rather, the totality circumstances conclusively establish that Ms. Yari copied and is using BIACAL's trade secret information.

91.     BIACAL also verified that the EventBank List includes a list of otherwise obscure academics that a former BIACAL Board member had provided for the limited purpose of promoting a specific event aimed at caregivers.  Erasing any doubt as the source, some of the emails for the academics include exactly the same typographical errors that appear on BIACAL's Master List.  Again, it is inconceivable that Ms. Yari coincidentally acquired contact information for each and every one of the academics on BIACAL's list and made the exact same typographical errors.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-18-
Complaint

92.     Similarly, the EventBank List also includes a list of email addresses for TBI support group administrators that a BIACAL volunteer collected by cold calling TBI support groups.  Yet again, it stands to reason that Ms. Yari did not independently collect this entire list of email addresses.

93.     Ms. Yari cannot defend her transmission of the EventBank List by claiming that she simply sent EventBank "the wrong list."  Ms. Yari's authorized access to BIACAL data was explicitly limited to smaller individual lists that she was responsible for uploading into the CRM database where the Master List is stored.  As such, Ms. Yari has no legitimate reason to have in her possession any massive spreadsheet that compiled individuals lists.  Her possession of such a spreadsheet of information derived BIACAL's Master List constitutes a per se violation of her agreement and misappropriation of BIACAL's trade secret.  The title of the EventBank List "Contact List – 06282019 –Final" suggests that Ms. Yari was manipulating BIACAL trade secret data on or about June 28, 2019, ***more than two months after*** she resigned from BIACAL's Board.  It was no innocent mistake.

94.     Further, BIACAL granted Ms. Yari access to its trade secret data in the Master List for the limited purpose of uploading individual lists to the Nationbuilder CRM database.  BIACAL explicitly prohibited Ms. Yari from collecting, compiling, or saving this data.  Ms. Yari had agreed explicitly and repeatedly to delete any copies, reproductions, or trace of BIACAL's data after she completed uploading it to the CRM database.

95.     Even setting aside Ms. Yari's improper disclosure of this information, Ms. Yari's merging and possession of this repository of BIACAL's trade secret data constitutes unlawful use exceeding her authorization, breach of her contract with BIACAL, and breach of her fiduciary duty owed to BIACAL.

**I.     Ms. Yari's continued unlawful misappropriation of BIACAL's trade secret Master List creates an imminent threat of irreparable harm.**

96.     BIACAL does not dispute that Ms. Yari and the Brain Society of

California may compete with its TBI Med Legal conference. However, Ms. Yari should be prohibited from using compiled confidential and trade secret data she unlawfully derived from BIACAL's Master List to promote a competing conference.

97. Given Brain Society's blatant copying of BIACAL's marketing and programming, if Ms. Yari uses the Master List to a *rival conference*, BIACAL will suffer irreparable competitive injury.

98. Ms. Yari's unlawful use of our Master List would substantially and irreparably damage the value BIACAL has created because Ms. Yari would have the opportunity to reach tens of thousands of qualified contacts BIACAL mined. This would allow Ms. Yari an unfair and unearned advantage and directly interfere with BIACAL's relationship with existing and potential attendees, exhibitors, sponsors, and speakers.

99. Ms. Yari's previous affiliation with BIACAL only makes matters worse—creating a risk that potential attendees, exhibitors, sponsors, and speakers will fall prey to the false impression that Ms. Yari's event has a legitimate connection to BIACAL. This likelihood of confusion compounds the risk of irreparable harm imposed by Ms. Yari's abuse of information derived from the Master List.

100. While BIACAL's TBI Med Legal conference attracts TBI professionals from across the country, BIACAL draws close to 90% of attendees from Los Angeles and Orange Counties. For this reason, Ms. Yari's conference in downtown Los Angeles is all the more of a threat.

101. If Ms. Yari uses confidential and trade secret data compiled from the Master List to promote Brain Society's upcoming conference, BIACAL would lose its primary competitive edge and momentum in attracting attendees, exhibitors, sponsors, and speakers. This loss would significantly impair ability to help TBI survivors and the professionals who serve them because the conference has been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

the most significant source of revenue. This damage could not be undone as Ms. Yari will have already gained a foothold by using the Master List to widely publicize her Brain SoCal Med Legal Conference.

102.     Ms. Yari's unlawful use of the Master List would irreparably impair BIACAL's relationships with its Board members, sponsors, exhibitors, and speakers who trusted BIACAL with confidential lists on the express condition that those lists be used for circumscribed purposes. Likewise, abuse of contact information also would damage BIACAL's goodwill and reputation with network contacts who did not authorize BIACAL to use their information for other purposes.

## FIRST CAUSE OF ACTION
**Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act**
**(18 U.S.C. § 1836, *et seq*.)**

103.     Plaintiff incorporates by reference as though fully set forth herein the allegations in Paragraphs 1 to 102 of this Complaint.

104.     Plaintiff created, developed, used, and owned the confidential, proprietary, and trade secret information contained in its Master List, which included data regarding members of the TBI community including, but not limited to, contact information (e.g. email addresses, mailing addresses and phone numbers); engagement and "click through" rates in response to BIACAL emails; history of attendance at BIACAL conferences and other industry events; history of exhibiting at and sponsorship of BIACAL conferences and other industry events (including type and amount); membership in industry groups (e.g. bar associations, non-profits, or support groups); history of donations to BIACAL; employer affiliations; social media information, and links to other contacts) for over 100,000 individuals affiliated with the TBI community as well as information regarding their attendance at and sponsorship of BIACAL events and other information regarding donations to BIACAL.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-21-
Complaint

105.   Plaintiff has taken and continues to take reasonable steps to keep the information compiled in its Master List secret by, among other things, maintaining the information a password-protected CRM database, limiting complete access to the Master List to two BIACAL members, and ensuring that each agreed to strict confidentiality terms.

106.   The confidential, proprietary, and trade secret information compiled in the Master List has independent economic value from not being generally known to and not being readily ascertainable through proper means by other professionals, businesses, and non-profits involved in the brain injury community who could profit and/or raise funds from the disclosure or use of the Master List, which allows access to thousands of active members of that community.

107.   The confidential, proprietary, and trade secret information compiled in the Master List relates to services used or intended to be used in interstate or foreign commerce.

108.   Defendant misappropriated Plaintiff's trade secrets by exceeding her authorization to access, use, and disclose BIACAL's trade secret information by compiling trade secret information derived from BIACAL's Master List and disclosing it to a third party involved in planning a conference competing with Plaintiff's TBI Med Legal conference.

109.   Defendant knew or had reason to know that she acquired and/or retained the trade secret information described in this Complaint under circumstances giving rise to a duty to maintain the information's secrecy and limit its use.

110.   Defendant's misappropriation of the confidential, proprietary and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

111.   As a direct and proximate result of Defendant's misconduct, Defendant has been unjustly enriched, and Plaintiff has suffered and will continue

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-22-
Complaint

to suffer damages, including goodwill, reputation, and lost fundraising opportunities.

112.   Defendant's conduct and continued use of Plaintiff's misappropriated trade secrets has caused, and unless enjoined by the Court, will continue to cause, great and irreparable harm and injury to Plaintiff, including substantial damage to its reputation and goodwill.  Plaintiff has no other adequate remedy at law for such acts and threatened acts.  Plaintiff, therefore, requests that during the pendency of this action, the Court issue a preliminary injunction, and that after trial, the Court issue a permanent injunction, restraining and enjoining Defendant and anyone acting in concert with her, from: (i) obtaining, using or disclosing Plaintiff's trade secrets for any purpose whatsoever and (ii) directing Defendant to return and immediately destroy all copies of information derived from Master List in her possession, custody or control.

113.   Plaintiff is entitled to recovery from Defendant the damages it has sustained as a result of Defendant's wrongful acts as alleged herein in an amount to be determined at trial.  Plaintiff is further entitled to recover from Defendant any gains, profits, advantages, and unjust enrichment she has obtained as a result of her wrongful acts as herein alleged, in an amount to be determined at trial.  Plaintiff is further entitled to an award of exemplary damages and attorney's fees.

<u>**SECOND CAUSE OF ACTION**</u>

**Breach of Contract**

114.   Plaintiff incorporates by reference as though fully set forth herein the allegations in Paragraphs 1 to 113 of this Complaint.

115.   Before Plaintiff granted Defendant access to the confidential, proprietary, and trade secret information compiled in the Master List, Defendant agreed to maintain the secrecy of that information and only use it for the specific and circumscribed purpose of migrating individual lists to Plaintiff's CRMS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-23-
Complaint

database. This agreement is valid and enforceable contract between Plaintiff and Defendant.

116. Plaintiff performed its obligation under the contract by granting Plaintiff access to the confidential, proprietary information compiled in the Master List for use on behalf of Plaintiff.

117. Defendant breached her obligations under the contract by accessing, using, and disclosing the confidential, proprietary, and trade secret information compiled in the Master List for purposes not authorized by Plaintiff.

118. As a direct and proximate result of Defendant's breach of the contract, Plaintiff has suffered harm.

## THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty

119. Plaintiff incorporates by reference as though fully set forth herein the allegations in Paragraphs 1 to 118 of this Complaint.

120. Between on or about January 27, 2019 and April 11, 2019, Defendant was a member of Plaintiff's Board of Directors. In that capacity, Defendant owed fiduciary duties to Plaintiff. Those duties include an obligation to serve Plaintiff with the highest degree of good faith, fair dealing, loyalty, due care, reasonable inquiry, oversight, and supervision.

121. At Defendant breached the fiduciary duties she owed to Plaintiff by engaging in conduct intended to sabotage the success of Plaintiff's conference and fundraising efforts. This includes planning a conference competing with Plaintiff's while still serving on Plaintiff's Board; using her position on Plaintiff's Board to recruit speakers for a rival conference; using confidential information regarding Plaintiff's contracts to support a rival conference; withholding information critical to the conference, including the list of registered attendees and sponsorship deal details; interfering with sponsorship deals; interfering with Plaintiff's relationship with sponsorships; failing to produce sponsorships that had been paid; using her

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-24-
Complaint

access to speakers to plan a rival conference; and misappropriating Plaintiff's confidential, proprietary, and trade secret information.

122. As a direct and proximate result of Defendant's breach of her fiduciary duties, Plaintiff has suffered damage and continues to suffer damage in an amount to be proven at trial.

123. Defendant's foregoing conduct was done with an intentional and conscious disregard of Plaintiff's rights and with oppression, fraud, and malice as defined pursuant to California Civil Code § 3294.

## FOURTH CAUSE OF ACTION
### Violation of California Bus. & Prof. Code § 17200

124. Plaintiff incorporates by reference as though fully set forth herein the allegations in Paragraphs 1 to 123 of this Complaint.

125. Defendant's wrongful conduct, as described above and incorporated by reference herein, constitutes unlawful, unfair, and/or fraudulent business acts and practices. Such acts and practices include, but are not limited to, misappropriating Plaintiff's confidential, proprietary, and trade secret information and breaching her fiduciary duty.

126. Defendant's business acts and practices were unfair in that the substantial harm suffered by Plaintiff outweighs any justification that Defendant may have for engaging in those acts and practices.

127. Defendant's business acts and practices were unlawful as described above.

128. Plaintiff has been harmed as a result of Defendant's unlawful, unfair, and fraudulent business acts and practices. Plaintiff is entitled to (a) recover restitution, including without limitation, all benefits that Defendant has received as a result of her unlawful, unfair, and fraudulent business acts and practices and (b) an injunction restraining Defendant from engaging in further acts of unfair competition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

## JURY DEMAND

129.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury of all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully seeks an Order of this Court:

1.   For actual damages in an amount to be proven at trial;

2.   For restitution and disgorgement of Defendant's unjust enrichment, in an amount to be proven at trial;

3.   For an award of punitive damages in amount to be proven at trial;

4.   For restitution;

5.   For Defendant to destroy and/or return the confidential, proprietary, and trade secret information compiled in the Master List in her possession, custody or control;

6.   For preliminary and permanent injunctions against future harm by disclosure or adverse use;

7.   For pre-judgment and post-judgment interest at the maximum legal rate, as applicable, as an element of damages that Plaintiff has suffered as a result of Defendant's wrongful acts;

8.   For reasonable attorneys' fees and costs incurred herein as allowed by law; and

9.   For such other relief as the Court deems just and proper.


Dated: July 10, 2019                    **ARENT FOX LLP**


By: /s/ Craig Gelfound
Craig Gelfound
Attorneys for Plaintiff
BRAIN INJURY ASSOCIATION
OF CALIFORNIA INC.

Arent Fox LLP
Attorneys At Law
Los Angeles